## THE PEOPLE, &c., *Respondents,* v. PHILLIP SHAFER, *Appellant.*

QUALIFICATIONS OF JURORS.—Under the Act of Congress commonly called the " Poland Bill," a person whose name is placed upon the jury list by the Clerk of the District Court or the Probate Judge, must be a *male citizen,* and must have resided in the Judicial District six months next preceeding the time of his selection by such officers.

JURY NOT ALLOWED TO SEPARATE IN CAPITAL CASE.—In capital cases the jury should never be permitted to leave the presence of the Court, even on an adjournment over night, except in charge of a sworn officer, and then they must be kept together.

DEFENDANT CANNOT CONSENT TO SEPARATION.—The Defendant in a capital case is not in a condition to consent to a separation of the jury during an adjournment, for he must run the risk of improper influences reaching their minds if he consent, or of prejudicing them against him if he refuses.

VERDICT MUST SPECIFY DEGREE OF MURDER.—On the trial of the Defendant indicted for the crime of murder, the jury returned the following verdict. "We the jury find the Defendant guilty as charged in the indictment;" *held,* not a proper verdict, for the degree of the homicide is a fact to be found by the jury, and in their verdict they must declare whether he be guilty of murder in the first or second degree.

STATUTES CONSTRUED.—Sec. 14, Chapter 30 of the Laws of Utah, does not effect or in any way repeal Sec. 7 of Chap. 22.

APPEAL from the Third District Court.

The facts appear in the Opinion.

*J. H. McCutcheon,* for Appellant.

*Wm. Carey,* District Attorney for the People.

EMERSON, J., delivered the Opinion of the Court.

The Defendant and one William B. Kelly were indicted for the murder of Peter Van Valkenburg.

The indictment contained two counts, charging the crime of murder as at the common law.

At the trial the Defendant interposed a challenge for cause to two of the jurors, Anthony Metcalf and Aaron DeWit. On the trial of the challenge it appeared that the two jurors named were not citizens of the United States at the time their names were placed upon the jury list, nor at the time they were drawn and summoned, but were naturalized two days after the commencement

of the term of the Court for which they were drawn and summoned to serve and did serve. The challenge was overruled and exceptions taken, and this is assigned as error.

At each adjournment of the Court, during the progress of the trial, which lasted several days, the jury were allowed to separate and go to their homes and about their ordinary business. This also is assigned as error.

On the trial the jury returned a verdict as follows : " We the jury in the above entitled case find the Defendant, Phillip Shafer, guilty as charged in the indictment."

Upon this verdict the Court proceeded to judgment, and sentenced the defendant to be hung.

A motion for a new trial was made, which was denied, and the case appealed to this Court.

The assignment of errors contains objections to the proceedings in the lower Court other than these above mentioned, but none which we deem entitled to any especial notice.

The objection that the indictment was not read to the jury, seems to us trivial, and is not well taken. The record shows that it was read to the Defendant, and that he plead "Not Guilty;" and it is admitted that the District Attorney stated to the jury, after they were sworn, the substance of the indictment, and informed them of the issue they were to try. The exceptions taken to a portion of the charge of the Court to the jury are not noticed by either counsel upon the argument, and we have treated them as abandoned by the defendant.

The other objections are of a more serious nature. We are of the opinion that the challenge to the two jurors named ought to have been sustained. The law requires that the District Clerk and Probate Judge " shall alternately select the name of a male citizen of the United States who has resided in the district for the period of six months next preceding, and who can read and write in the English language." He should be a male *citizen* who has resided in the district six months next preceeding the time of his selection, and not *a person*

who may have resided there six months next preceding that time, but who may become a citizen afterwards, before actually drawn upon a case to be tried. In other words, the language of the act is mandatory, and the persons selected should possess these several qualifications named in the act at the time their names are selected by the District Clerk and Probate judge. 1 Wharton, American Crim. Law, Sec. 469. The overruling of the challenge for this cause was error.

At the Common Law the jury in capital cases are to be kept together during the trial and until they are discharged from the case. This rule has been somewhat relaxed in some of the States. And yet most of the cases where the rule has been thus relaxed are where there has been a temporary and momentary separation of one or two jurors from their fellows, while the jury itself was in charge of an officer, and under such circumstances as evidenced that they were subject to no improper influences. We have no positive statute upon the subject. Section 11 of the act regulating the mode of procedure in criminal cases, enacts that : "The persons selected shall be sworn to try the case faithfully and give a just verdict, and have no communication concerning the cases until they are discharged, with any but a fellow juror, or with the Court personally, or *through the officers in whose charge they may be placed.*" Of course this has reference to the conduct of the jury in all criminal cases, felonies and misdemeanors, as well as capital cases. In felonies and misdemeanors it has long been the rule to leave it discretionary with the Court to allow a separation or not during the progress of the trial, and before they retire to consider their verdict. The rule is different in capital cases.

From a review of most, if not all of the decisions upon this point, Mr. Wharton extracts the following principles: Separation of the jury, in a capital case, in such a way as to enable them or either of them to be tampered with is ground for a new trial. The authorities, however, differ as to whether (1) this ground is ab-

solute, or (2) *prima facie,* subject to be rebutted by proof from the prosecution that no improper influence reached the jury, or (3) merely contingent, upon proof to be offered by the defence that no tampering really took place.    *    *    *

(2)    That such separation in a capital case is *prima facie* ground for a new trial, subject to be rebutted by proof from the prosecution that no improper influence reached the jury, is the position generally taken by the American Courts.    Wharton's Criminal Law, Sec. 3135.

We deem this to be the current doctrine and the safer rule.    In this case there is no attempt to show, on the part of the prosecution, or a suggestion even that no improper influence reached the minds of the jurors, during the several periods they were allowed to separate and go to their homes and about their places of business. It is impossible for us or any one to tell what impressions, other than those drawn from the testimony were made upon their minds.

Mr. Bishop states the doctrine thus : " It is a doctrine prevailing almost every where in this country, that, in capital cases the jury can never be permitted to leave the presence of the Court, even on an adjournment over night, except in charge of a sworn officer, and then they must be kept together.    1st Bishop Crim. Procedure, Sec. 824.

The reason stated in the record for allowing the separation of the jury, did not in our minds constitute such an *imperious necessity,* as will excuse its being done.

When those, whose duty it is to provide the executive officer of the Court with funds, so that he can attend to all the necessary duties of his office, among which is that of preparing accommodations for keeping jurors together in capital cases, learn that if this is not done the public will be put to the trouble and expense of a second trial, the negligence mentioned in the record will probably be remedied.

We do not think the error complained of was cured by the consent given by one of the attorneys for the De-

fendant, even if it should be admitted that the attorney could give such consent for the prisoner. The Defendant is not in a situation to exercise a fair choice, for he must run the risk of improper influences reaching their minds, if he consents, or of prejudicing them against him if he refuses. " According to what is probable, the better doctrine the consent of the prisoner to a separation which the general rules of the law do not permit, should never be asked of him, and if it is asked and granted, or even granted without his being asked it will avoid nothing." 1 Bishop Crim. Prac. Sec. 827. It was error to allow the jury to separate, and the error was of such a nature as to vitiate the verdict.

The remaining assignment of error is that the jury did not in their verdict ascertain and declare the degree of the crime, as required by law. Section 7 of chapter 22 of the Laws of Utah, provides that " Upon the trial of an indictment for murder, the jury, if they find the Defendant guilty, must inquire, *and in their verdict declare,* whether he be guilty of murder in the first or second degree. But if such Defendant be convicted upon his own confession in open Court, the Court must proceed by the examination of witnesses to determine the degree of murder and award sentence accordingly."

The degree of the homocide is a *fact* which the statute requires to be specially found by the jury, and it makes this finding imperative upon them. The reason of the rule is apparent, and is supported by an abundance of authority.

The provisions of Sec. 14 of Chap. 30 of the Laws of Utah, although passed subsequent to the passage of the Act above mentioned do not affect Sec. 11 of that Act.

The evident intent and purpose of the later Act was to take from the Court power to fix the sentence and giue it to the jury in all criminal cases; less than capital. But it takes this very finding of the jury required by Sec. 11 of Chap. 22 to determine whether it is a capital case or not.

This the jury have not done, and in a capital case the Court cannot assume that they designed from a general finding to fix the grade of the crime.

For these errors the judgment must be reversed, the verdict set aside, and the case remanded for a new trial.

LOWE, C. J. and BOREMAN, J., concur.